## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| WENDY L. PAINTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 19-02336-DDC-ADM |
| | ) | |
| MIDWEST HEALTH, INC., | ) | |
| A Kansas Corporation, d/b/a Pioneer | ) | |
| Ridge Health and Rehabilitation, | ) | |
| | ) | |
| Defendant. | ) | |

## PRETRIAL ORDER

A pretrial conference was conducted in this case on 26th day of August, 2020, by U.S. Magistrate Judge Angel D. Mitchell.  The plaintiff, Wendy L. Painter, appeared through counsel, Theodore J. Lickteig.  The defendant, Midwest Health, Inc, appeared through counsel, Stephen D. Lanterman.

This pretrial order supersedes all pleadings and controls the subsequent course of this case. It will not be modified except by consent of the parties and the court's approval, or by order of the court to prevent manifest injustice.  Fed. R. Civ. P. 16(d) & (e); D. Kan. Rule 16.2(b).

## 1)    PRELIMINARY MATTERS.

**a)    Subject-Matter Jurisdiction.**  Subject-matter jurisdiction is invoked under 28 U.S.C. § 1331 and 28 U.S.C. § 1367 and is not disputed.

**b)    Personal Jurisdiction.**  The court's personal jurisdiction over the parties is disputed.

**c)    Venue.**  Venue in this court is not disputed.

d)      **Governing Law.**  Subject to the court's determination of the law that applies to the case, the parties believe and agree that the substantive issues in this case are governed by the following law:

> Federal law with respect to Count I (Title VII – Reverse Race Discrimination), Count II (Title VII – Retaliation), Count III (42 U.S.C. § 1981 – Reverse Race Discrimination), Count IV (42 U.S.C. § 1981 – Retaliation),  and Kansas law with respect to Count V of the petition (Tortious Interference with Prospective Contractual Relationship or Expectancy) and Count VI (K.S.A. 44-117 and 44-119 – Blacklisting).

**2)      STIPULATIONS.**

a)      The following facts are stipulated:

>    (1)      Painter was hired to work at Pioneer Ridge Health and Rehabilitation (Pioneer Ridge), a company operating in Lawrence, Kansas on or about January 2, 2006.
>
>    (2)      Plaintiff's actual employers during her employment were Pioneer Ridge Nursing Facility Operations, LLC. and Midwest Health, Inc.
>
>    (3)      Plaintiff has worked for both Pioneer Ridge Nursing Facility Operations, LLC in Lawrence, Kansas and for Midwest Health, Inc. in Topeka, Kansas
>
>    *[Plaintiff: The Plaintiff disputes this as a stipulation. The Plaintiff will move for leave to amend to add Pioneer Ridge Nursing Facility Operations, LLC and, if allowed to amend, will present the case as either a Joint Employer or Single Employer case as provided in Title VII law. The Plaintiff notes that there is no such entity on file with the Kansas Secretary of State designated as "Pioneer Ridge Nursing Facilities Operations, LLC."]*
>
>    (4)      Plaintiff's Direct Supervisor on the date of her termination was Debbie Garrett
>
>    (5)      Debbie Garrett is an employee of Pioneer Ridge Nursing Facility Operations, LLC.

2

(6)     Plaintiff's Director of Nursing on the date of her termination was Kathleen King-Alvoid.

(7)     Kathleen King-Alvoid was an employee of Pioneer Ridge Nursing Facility Operations, LLC during the time of the events in question.

(8)     The Administrator at Pioneer Ridge on the date of Plaintiff's termination was Ann Bell.

(9)     Ann Bell is an employee of Pioneer Ridge Nursing Facility Operations, LLC.

(10)    Plaintiff was working on February 16, 2018 at the Pioneer Ridge Nursing and Rehabilitation facility

(11)    Plaintiff was involved in an argument with the son of a resident on February 16, 2018.

(12)    During the argument both Plaintiff and the son of the resident raised their voices.

(13)    As a result of the condition of the resident and the plaintiff's acknowledgement of an argument with the resident's son, and defendant's belief that plaintiff refused to take the vital signs of the resident, an Allegation of Neglect was reported to Kansas Department of Aging and Disability Services (KDADS).

(14)    Plaintiff was suspended on February 16, 2018 by Ann Bell while the Allegation of Neglect was investigated.

(15)    On February 22, 2018, Pioneer Ridge submitted its conclusion of the investigation to KDADS

(16)    Pioneer Ridge reported to KDADS that as a result of the investigation it determined that there was no neglect to the resident and that the changes in the resident's condition were assessed and addressed timely.

(17)    Pioneer Ridge reported to KDADS that as a result of the investigation, the facility terminated the employment of Plaintiff based upon a failure to meet a reasonable request of a family member.

(18)    Plaintiff was terminated on February 22, 2018, by Ann Bell, Administrator of Pioneer Ridge.

3

(19)    Ann Bell did not need permission or approval of anyone to terminate the plaintiff's employment

(20)    Plaintiff was terminated from Pioneer Ridge for the reason that she "neglected patient care duties related to the health and physical comfort of a resident when she failed to follow a reasonable request from a family member related to the care of his father" and when she "conducted herself unprofessionally in a manner that adversely effected the facility".

(21)    The Employee Discipline Record also notes that plaintiff violated work rules 35, 37 and 56.

(22)    KDADS conducted its own investigation and reviewed the notarized witness statements of 2 witnesses, Facility Unit Manager and Facility CNA.

(23)    As a result of its investigation, KDADS entered its findings in KDADS Case No. 18-126724 indicating that it had made a finding of Abuse and Neglect under K.S.A. 39-1401(f)(1), K.S.A. 39-1401(f)(5) and K.S.A. 39-1401(g).

**b)**    The parties have stipulated to the admissibility of the following exhibits for purposes of summary judgment and trial:

(1)    Pioneer Ridge Daily Staffing Sheet (D 000156)

(2)    Employee Time Off - ETO Request and Approval Form (WLP25)

(3)    Employee Disciplinary Record (WLP 110 and Deposition Exhibit 15)

(4)    Painter Payroll Deposit sheet (WLP 253 and Deposition Exhibit 2)

(5)    W-2 Tax Statements (D 001254 – D 001255)

(6)    Employee Termination Form (D 001215)

(7)    Allegation of Neglect (WLP 111 and Deposition Exhibit 16)

(8)    Kansas Dept for Aging & Disability Services CP Number: 6724 (D 000439 – D 000452 and Deposition Exhibit 28)

(9)    KDADS Alleged Perpetrator Information Form (WLP 112 – WLP 118 and Deposition Exhibit 4)

4

(10)    KDADS Notice of Finding of Abuse (WLP 698 – WLP 705 and Deposition Exhibit 9 and 29)

(11)    KDADS Email Exchange (WLP 721- WLP 722)

(12)    KDADS KORA Response (WLP 394 – 395)

(13)    Painter Employment Applications (WLP 371 – WLP 378)

(14)    EEOC Charge of Discrimination (D 000263 – D000273 and Deposition Exhibit 6)

(15)    Employee Warnings (D 000316 - D 000317, and D 000341 – D000343)

(16)    "Dad this morning" Email Exchange of February 16, 2018 between Lawhorn and Bell (Deposition Exhibit 27)


**3)**    **FACTUAL CONTENTIONS.**

**a)**    **Contentions of Plaintiff(s).**

The Plaintiff began her employment in either 2005 or 2006 as an L.P.N. at Pioneer Ridge Health and Rehabilitation in Lawrence, Kansas. Her employment ended at Pioneer Ridge on February 16, 2018. She is White or Caucasian. Pioneer Ridge Health and Rehabilitation is part of the family of communities over which Midwest Health, Inc. exercises a degree of control, including over employees of the various members of the corporate family. Since the year 2010, this relationship with Pioneer Ridge has included services to be provided by Midwest Health, Inc. to Pioneer Ridge through a Management Agreement.

The Plaintiff has connected specifically to Midwest Health in various ways. The payroll statements she received usually bore an address for Midwest Health, Inc. The Plaintiff was covered by a group health insurance policy in the name of an entity affiliated with Midwest Health, Inc. Various policies and handbooks were issued to Pioneer Ridge employees at the direction of Midwest Health, Inc. After the Plaintiff filed a Charge of Discrimination naming Pioneer Ridge Health and Rehabilitation as the employer, Midwest Health, Inc. provided a position statement to the U.S. Equal Employment Opportunity Commission.

These connections provide the basis for treatment of Pioneer Ridge Nursing Facility Operations, LLC and Midwest Health, Inc. as either Joint Employers or as a Single Employer under Title VII law, or as alter egos of each other under common law.

5

The Plaintiff worked under several different Directors of Nursing with the last one being Kathleen King-Alvoid, who started employment at Pioneer Ridge in 2015. Ms. King-Alvoid is Black or African American.

The Plaintiff began to experience disparity in treatment compared with Black, African American and African employees toward the end of her tenure, starting most noticeably in 2016. As the Plaintiff observed and experienced the workplace, she was disciplined for relatively minor or non-existent matters. On the other hand, Black, African American and African employees who committed violations pertaining to care and treatment of residents were not disciplined.

Additionally, Ms. King-Alvoid questioned the Plaintiff's abilities and made negative comments toward her about her work performance, was expected to find someone else to cover a shift if she requested time off. On one occasion, the Plaintiff's request for time off to assist with the care of her father was denied.

The Plaintiff reported the disparity in treatment based on race to Ann Bell, the administrator of Pioneer Ridge. After the last of these reports, in the fourth quarter of 2017, Ms. King-Alvoid retaliated against the Plaintiff by assigning her to the Rapid Recovery Unit. That assignment was not typically made to the Plaintiff and was less desirable than her regular assignment of Charge Nurse for one of the halls of the home.

In an incident on February 16, 2018, the Plaintiff and the son of a resident had a confrontation over the care and treatment of the resident and threats made by the son to the Plaintiff. This resulted in another nurse providing attention to the resident. The resident was later taken to a hospital and was diagnosed with sepsis.

Ms. King-Alvoid submitted a report of alleged abuse and neglect to the Kansas Department for Aging and Disability Services, even though the Plaintiff was not working in a capacity that KDADS had oversight authority to act on any such allegation. Subsequent reports by Ms. King-Alvoid to KDADS about the matter stated an address for the Plaintiff that was inaccurate by approximately six years. Pioneer Ridge had the correct and current address for the Plaintiff at the time of these reports.

Although the officer with final authority to terminate the Plaintiff at Pioneer Ridge was Ann Bell, the administrator, Ms. King-Alvoid was instrumental in casting the Plaintiff in a bad light to Ms. Bell. These actions support a cat's paw or subordinate bias theory of liability.

KDADS later found that the Plaintiff had committed abuse and neglect of the resident. That finding resulted in a ban on employment of the Plaintiff in any nursing care facility. KDADS attempted to give notice to the Plaintiff of the finding but used the old and incorrect address provided by Ms. King-Alvoid. It was the

responsibility of Pioneer Ridge to provide current addresses for employees who were subject to the jurisdiction of KDADS.

The Plaintiff has sustained monetary and non-monetary damages that she has attempted to mitigate.

**b)**      **Contentions of Defendant(s).**

Defendant, Midwest Health, Inc., denies any and all claims for discrimination, retaliation, tortious interference or blacklisting. The employer of the Plaintiff was at all times Pioneer Ridge Nursing Facility Operations, LLC. This is the only employer plaintiff has ever had while she worked at the Lawrence facility for Pioneer Ridge Health and Rehabilitation. All decisions effecting Plaintiff's employment and the reporting of the Allegations of Abuse and Neglect were done by Pioneer Ridge Nursing Facility Operations, LLC and the employees of Pioneer Ridge. Midwest Health, Inc., made no decision affecting any aspect of plaintiff's employment and had no ability to (i) terminate; (ii) discipline; (iii) supervise on a daily basis; (iv) train; (v) evaluate; (vi) set compensation and hours; and (vii) control employee records of the Plaintiff. However, despite being advised on multiple occasions and having documents that clearly indicated who the employer was (for example plaintiff's W-2 form), Plaintiff had failed to name her actual employer as the Defendant in this litigation. As Defendant is neither a joint nor single employer of the Plaintiff, this litigation has been brought against the wrong party. Moreover, Plaintiff has continued to litigate this matter and has thus far refused to amend her complaint or correct such deficiencies.

The Plaintiff has developed and/or provided no proof of any actions that would constitute reverse race discrimination, and her termination was for a legitimate and non-discriminatory reason - namely that Plaintiff "neglected patient care duties related to the health and physical comfort of a resident when she failed to follow a reasonable request from a family member related to the care of his father" and that Plaintiff "conducted herself unprofessionally in a manner that adversely effected the facility". To the extent that plaintiff is attempting to bring any claims under Title VII she is limited by caps to recovery of compensatory and punitive damages to $100,000.00 as there are only 107 employees at Pioneer Ridge.

The Plaintiff's Tortious Interference and Blacklisting claims arise out of a finding of Abuse and Neglect under K.S.A. 39-1401(f)(1), K.S.A. 39-1401(f)(5) and K.S.A. 39-1401(g) that was made by the Kansas Department of Aging and Disability Services (KDADS). This determination was made by KDADS independently and through their own investigation into the actions of Plaintiff on February 16, 2018, and notice provided to Plaintiff by KDADS was done at the last address on file in the Kansas Nurse Aide Registry. Defendant had nothing to do with the KDADS independent investigation and determination of Abuse and Neglect, or where KDADS decided to send its notice of the Finding of Abuse and

Neglect.  Furthermore, plaintiff cannot meet the elements of a claim for Tortious Interference as the decision to place an "Employment Prohibition" on the plaintiff was made independently by KDADS not the defendant.  There plaintiff has also failed to produce any evidence that there was an expectancy or knowledge of expectancy in any action by KDADS or in any particular future employment, that the actions taken against plaintiff were the responsibility of the defendant, or that there was any intentional misconduct by the defendant.

**4)      LEGAL CLAIMS AND DEFENSES.**

**a)      Legal Claims of Plaintiff(s).**

Plaintiff asserts that she is entitled to recover upon the following theories:

Count I (Title VII – Reverse Race Discrimination),

Count II (Title VII – Retaliation),

Count III (42 U.S.C. § 1981 – Reverse Race Discrimination),

Count IV (42 U.S.C. § 1981 – Retaliation),

Count V of the petition (Tortious Interference with Prospective Contractual Relationship or Expectancy), and

Count VI (K.S.A. 44-117 and 44-119 – Blacklisting)

**b)      Defenses of Defendant(s).**

Defendant, Midwest Health, Inc asserts the following defenses:

Defendant denies Plaintiff's claims of Reverse Race Discrimination, Retaliation, Tortious Interference with Prospective Contractual Relationship or Expectancy, and Blacklisting.

Defendant has never been an employer in any capacity of the plaintiff and is not the proper party to this litigation.

Defendant has no ability to (i) terminate; (ii) discipline; (iii) supervise on a daily basis; (iv) train; (v) evaluate; (vi) set compensation and hours; or (vii) control employee records of the Plaintiff.

Plaintiff has elected to pursue its claims against Defendant even though she has been advised that she has the wrong party from the beginning of this litigation.

The dismissal of Plaintiff from Pioneer Ridge was unrelated to any allegation of discrimination or reporting of discrimination but rather due to plaintiff's conduct in dealing with a resident and the resident's legal representative on a matter of care.

Plaintiff's claims are barred, in whole or in part, against this Defendant in that it was never named a party in the underlying administrative claim with the EEOC.

Plaintiff has failed to mitigate her claims and has voluntarily left other employment which resulted in an economic loss.

Plaintiff's damages are capped at $100,000.00 for all Title VII claims as to compensatory and punitive damages.

Plaintiff cannot meet the elements of tortious interference.

There has never been a criminal conviction for Blacklisting, which is a pre-requisite to any claim civil recovery for damages, penalties or attorneys' fees under the Kansas' Blacklisting statute, K.S.A. 44-119.

**5)      DAMAGES AND NON-MONETARY RELIEF REQUESTED.**

Count I – Title VII, Reverse Race Discrimination:
    Back wage loss (to be amended to at the first day of trial): $83,932.83.
    Pain and suffering, emotional distress: $200,000.00.
    Punitive Damages: $200,000.00.
    Front Pay: $142,204.98.
    Attorney Fees as authorized by 42 U.S.C. § 2000e—5(k): Amount to be determined.

Count II – Title VII, Retaliation:
    Back wage loss (to be amended to at the first day of trial): $83,932.83.
    Pain and suffering, emotional distress: $200,000.00.
    Punitive Damages: $200,000.00.
    Front Pay: $142,204.98.
    Attorney Fees as authorized by 42 U.S.C. § 2000e—5(k): Amount to be determined.

Count III – 42 U.S.C. § 1981, Reverse Race Discrimination:
    Back wage loss (to be amended to at the first day of trial): $83,932.83.
    Pain and suffering, emotional distress: $200,000.00.
    Punitive Damages: $500,000.00.
    Front Pay: $142,204.98.
    Attorney Fees as authorized by 42 U.S.C. § 1988: Amount to be determined.

Count IV – 42 U.S.C. § 1981, Retaliation.
    Back wage loss (to be amended to at the first day of trial): $83,932.83.
    Pain and suffering, emotional distress: $200,000.00.
    Punitive Damages: $500,000.00.
    Front Pay: $142,204.98.
    Attorney Fees as authorized by 42 U.S.C. § 2000e—5(k): Amount to be determined.

Count V – Tortious Interference with Prospective Contractual Relationship or Expectancy.
    Back wage loss (to be amended to at the first day of trial): $83,932.83.
    Pain and suffering, emotional distress: $200,000.00.
    Punitive Damages: $500,000.00.

Count VI – Blacklisting.
    Back wage loss (to be amended to at the first day of trial): $83,932.83.
    Treble Damages pursuant to K.S.A. 44-119: Amount to be determined.
    Attorney Fees as authorized by K.S.A. 44-119: Amount to be determined.

## 6)   AMENDMENTS TO PLEADINGS.

The Plaintiff intends to file a Motion for Leave to File a Third Amended Complaint for the purpose of adding Pioneer Ridge Nursing Facility Operations, LLC. as a Defendant.

The Defendant will oppose any motion for leave as it is untimely and would cause such litigation to be reopened to address a party who has not been involved in this litigation to date.

## 7)   DISCOVERY.

Under the scheduling order and any amendments, all discovery was to have been completed by July 24, 2020 (with the exception of the deposition of the Fed. Civ. Pro. R. 30(b)(6) deposition of Midwest Health, which was conducted July 28, 2020). Discovery is now complete.

Unopposed discovery may continue after the deadline for completion of discovery so long as it does not delay the briefing of or ruling on dispositive motions or other pretrial preparations. Although discovery may be conducted beyond the deadline for completion of discovery if all

parties are in agreement to do so, under these circumstances the court will <u>not</u> be available to resolve any disputes that arise during the course of such extended discovery.

**8)      MOTIONS.**

      **a)      Pending Motions.**

            Defendant filed a summary judgment motion on July 9, 2020 addressing the naming of the wrong party for this litigation, the lack of a meritorious issue with the claim of tortious interference and blacklisting.  Defendant believes this motion if granted fully resolves all issues in this case at this point

      **b)      Additional Pretrial Motions.**

      After the pretrial conference, the parties intend to file the following motions:

            An addition summary judgment by Defendant addressing the lack of evidence under the applicable legal standards to support claims of reverse discrimination and retaliation;

            Motions in limine

             The Plaintiff proposes to file a Motion for Leave to File a Third Amended Complaint by August 14, 2020, for the purpose of adding Pioneer Ridge Nursing Facility Operations, LLC as a Defendant.

            The Defendant will oppose any motion for leave as it is untimely and would cause such litigation to be reopened to address a party who has not been involved in this litigation to date.

The dispositive-motion deadline, as established in the scheduling order and any amendments, is **September 9, 2020**.

The parties should follow the summary-judgment guidelines available on the court's website:

    http://ksd.uscourts.gov/wp-content/uploads/2015/10/Summary-Judgment-Guidelines.pdf

Consistent with the scheduling order filed earlier in this case, the arguments and authorities section of briefs or memoranda must not exceed 30 pages, absent an order of the court.

       **c)**       **Motions Regarding Expert Testimony.**

Not applicable, i.e., the parties have stipulated that no expert testimony will be used in this case.

**9)**       **TRIAL.**

The trial docket setting, as established in the scheduling order and any amendments, is **, 20\_\_, at _____ \_.m., in Kansas City, Kansas.**  This case will be tried by jury.  Trial is expected to take approximately five (5) days.  The court will attempt to decide any timely filed dispositive motions approximately 60 days before trial *[or as otherwise stated in the scheduling order].*  If no dispositive motions are timely filed, or if the case remains at issue after timely dispositive motions have been decided, then the trial judge may enter an order or convene another pretrial conference to set deadlines for filing final witness and exhibit disclosures, exchanging and marking trial exhibits, designating deposition testimony for presentation at trial, motions in limine, proposed instructions in jury trials, and proposed findings of fact and conclusions of law in bench trials.

IT IS SO ORDERED.

Dated _____ 20\_\_, at _____, Kansas.

Angel D. Mitchell
U. S. Magistrate Judge

12

LAW OFFICE OF THEODORE J. LICKTEIG
12760 West 87th Street, Suite 112
Lenexa, KS   66215
TEL:   (913) 894-1090

By:  /s/: Theodore J. Lickteig
Theodore J. Lickteig, KS #12977
tjllawoffice@planetkc.com
**ATTORNEYS FOR PLAINTIFF**


*and*


SLOAN, EISENBARTH, GLASSMAN,
McENTIRE & JARBOE, L.L.C.
534 S. Kansas Ave., Ste. 1000
Topeka, KS 66603
TEL:              (785) 357-6311
FAX:               (785) 357-0152

By:  /s/: Stephen D. Lanterman
Stephen D. Lanterman, #18844
slanterman@sloanlawfirm.com
**ATTORNEYS FOR DEFENDANT**

13